USA v. Murdock

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2013

(Motions Submitted: October 22, 2013                    Decided: November 8, 2013)

Docket No. 13-3236

_____

UNITED STATES OF AMERICA,

Appellee,

- v. -

SETH MURDOCK,

Defendant-Appellant.

_____

Before: KATZMANN, Chief Judge, KEARSE and WESLEY, Circuit Judges.

Motion by defendant for an injunction pending appeal from an order of the United States District Court for the District of Vermont, William K. Sessions, III, Judge, denying his motion for a modification of the conditions of his supervised release to require the United States Bureau of Prisons, upon his release from prison, to transfer him to the Eastern District of Michigan for supervised release, as recommended by the court in sentencing. Motion by the United States for summary affirmance of the district court's order.

Motion for summary affirmance denied. Order denying supervised-release transfer vacated; matter remanded for further proceedings; motion for injunction pending appeal denied as moot.

SETH MURDOCK, Bruceton Mills, West Virginia, Defendant-Appellant pro se.

TRISTRAM J. COFFIN, United States Attorney for the District of Vermont, Burlington, Vermont (Gregory L. Waples, Assistant United States Attorney, Burlington, Vermont, of counsel), for Appellee.

KEARSE, Circuit Judge:

Defendant Seth Murdock, who is scheduled to be released from federal prison on November 15, 2013, and thus to commence serving his term of supervised release on that date, see 18 U.S.C. § 3624(e), appeals pro se from an order of the United States District Court for the District of Vermont, William K. Sessions, III, Judge, denying his motion for a modification of the conditions of his supervised release to require that supervised release be served in the Eastern District of Michigan, rather than in the District of Vermont, where he was convicted and sentenced. The district court denied Murdock's motion, stating that it lacked authority to order such a transfer over the objection of the Eastern District of Michigan. On appeal, Murdock argues principally that the district court misapprehended its authority to modify the conditions of his supervised release, and that his motion should have been granted in order to carry out the recommendation made by the district court in Murdock's sentencing; he has moved in this Court for an injunction pending appeal, requiring his release to the Eastern District of Michigan rather than to the District of Vermont. For the reasons that follow, we conclude that the district court has authority to entertain Murdock's motion for modification of his supervised-release conditions under 18 U.S.C. § 3583(e)(2) and to grant that motion with the qualification specified by the Eastern District of Michigan in its conditional agreement to accept Murdock for supervision. Accordingly, we vacate the order of the district court

and remand for expedited proceedings on Murdock's modification motion in accordance with Fed. R. Crim. P. 32.1(c). The motion for an injunction pending appeal is denied as moot.

# I. BACKGROUND

The facts essential to this appeal--many of which are described in unobjected-to passages of the presentence report ("PSR") prepared in connection with Murdock's current conviction or in the government's response to questions posed by this Court in an order dated October 3, 2013, with respect to the present appeal--appear to be undisputed. In 2012, Murdock was convicted, following his plea of guilty, of interstate transportation of stolen vehicles, in violation of 18 U.S.C. § 2312. He was sentenced, in pertinent part, to 30 months' imprisonment, to be followed by a three-year term of supervised release.

Prior to this prosecution, Murdock's only connection with Vermont was his acquisition in Vermont of the vehicles that were the subject of his conviction. Murdock, 55 years of age at the time of this conviction, was born and raised in the Detroit area, in the Eastern District of Michigan, where he lived until the early 1980s. He returned to that area in the early 2000s and remained there until his arrest in this case. Murdock has three siblings and two half-siblings living in Detroit, and he is a co-owner of a family business--a funeral home--in Detroit. In sentencing Murdock, Judge Sessions stated that, consistent with a request by Murdock, the court would "recommend that once he has completed his period of imprisonment, that he be returned to the Detroit, Michigan area." (Sentencing Transcript, October 29, 2012, at 57.) The judgment of conviction included that recommendation.

Murdock is scheduled to be released from prison on November 15, 2013, and to begin his term of supervised release on that date. In the spring of 2013, the Bureau of Prisons (or "BOP") prepared to transfer Murdock to the Eastern District of Michigan for service of his supervised release. Murdock submitted to his BOP case manager a supervised-release plan that included his proposed residence with one of his sisters. The case manager sent Murdock's proposed release plan to the United States Probation Office in the Eastern District of Michigan ("Michigan Probation"). In reviewing the plan, however, the Michigan Probation officials "interviewed the wrong family member," one "who indicated that she was not willing to have Mr. Murdock reside with her," and they were thus unable to confirm Murdock's proposed residence. (Memorandum from Vermont Deputy Chief Probation Officer Ronald P. Tetu to District Judge Sessions dated June 21, 2013 ("Vermont Probation Memorandum"), at 1; see also undated sworn Declaration of Vermont Deputy Chief Probation Officer Ronald P. Tetu ("Tetu Decl.") submitted to this Court, confirming the truth and accuracy of the statements made in the Vermont Probation Memorandum.) Michigan Probation also expressed concern that Murdock had previously been on supervised release in the Eastern District of Michigan and twice had had that status revoked for violations of the conditions imposed. (See Government Memorandum in Opposition to Motion for Preliminary Injunction [Pending Appeal] and [in Support of] Motion for Summary Affirmance on the Merits ("Government Mem.") at 5-6.) Michigan Probation rejected Murdock's plan to serve his supervised release in the Eastern District of Michigan.

In April 2013, after Murdock was informed of that rejection and was advised that he would therefore be required to serve his supervised-release term in Vermont, he moved in the district court for a modification of the conditions of his supervised release to require that, upon his release

4

from prison, his supervised release be served in the Eastern District of Michigan. (See Defendant's Pro-Se Motion To Transfer Jurisdiction of Supervised Release (hereinafter "Murdock's § 3583(e)(2) Motion": Although Murdock's motion cited 18 U.S.C. § "35**6**3(**c**)(2)" (emphases added), we construe it as having been made under § 3583(e)(2), which deals with modifications of supervised release, and not under § 3563(c), which deals with modifications of probation and has no subsections).) Murdock's § 3583(e)(2) motion was not decided until August 2013.

In the meantime, officers of the United States Probation Office in the District of Vermont ("Vermont Probation") twice contacted Michigan Probation on Murdock's behalf to ask Michigan Probation to reconsider its refusal. In response to the first request for reconsideration, the Michigan Probation officials "indicated that they would in fact accept Mr. Murdock's case for supervision provided he agreed to a modification of conditions to include six months in a Residential Reentry Center (RRC)." (Vermont Probation Memorandum at 1.)

Murdock was informed that Michigan Probation would agree to accept him for supervised release on the condition that he agree to spend six months in an RRC, also known as a "halfway house" (Tetu Decl. ¶ 4). Murdock refused to agree to that condition, explaining that he viewed it as an extension of his period of incarceration.

Vermont Probation made another attempt to get Michigan Probation to reconsider Murdock's release plan and explained that the Michigan Probation officers had interviewed the wrong Murdock sister. Vermont Probation provided the correct contact information and asked that Michigan Probation contact the correct sister to confirm that Murdock's original release plan contained an acceptable proposed residence. Michigan Probation then visited the home of the correct Murdock sister and responded that

5

> [t]he residence provides adequate housing, however, after careful consideration, relocation will only be granted <u>if the offender signs a waiver to modify his conditions to include up to six months placement at a Residential Reentry Center due to his history of noncompliance in this district</u>. If he is not willing to sign the waiver, relocation is denied...

When asked to expand on the reasons why they believe Mr. Murdock would benefit from an RRC placement, E/MI [<u>i.e.</u>, Michigan Probation] responded as follows:

> Mr. Murdock is considered to be a high risk offender based on his previous supervision progress in our district and his prior record. He previously violated supervised release in this district by leaving our district on numerous occasions without approval and committing new fradulent (sic) crimes, among other violations. He also fled just before he was to appear before Chief Judge Gerald Rosen on a Revocation Hearing and a warrant had to be issued for his arrest. By placing him in RRC, we are hoping to decrease the risk he poses while implementing a controlling strategy. The RRC will provide a structured environment, allow him to find legitimate employment, and will control his activities again, to hopefully reduce the risk of recidivism. Placement would also restrict the offender from traveling outside our district and committing new crimes.

(Vermont Probation Memorandum at 2 (emphasis ours).)

In light of Murdock's refusal to accept the condition demanded by Michigan Probation, the government opposed Murdock's motion for the transfer of his supervised release to the Eastern District of Michigan, stating that "[t]ransfer[s] of jurisdiction proceedings are well established and require the receiving court's concurrence. It would be hard to imagine the court in [the Eastern District of Michigan] accepting jurisdiction [of] this case if [Murdock] is not being actively supervised in that district." (<u>Id</u>.) The government noted, however, that Murdock's "ultimate goal[,] which is to return to his native Detroit where he has family support, community ties and employment opportunities," and which "would appear to be a much better option than returning to this district where he would be essentially homeless," is a goal that Murdock would be "able to achieve" simply

6

"by agreeing to" the condition that he spend up to six months in a halfway house. (Id. at 3.)

In an order dated August 22, 2013 ("August Order"), the district court denied Murdock's motion, stating as follows: "The Eastern District of Michigan has refused to accept supervision of Mr. Murdock, and this Court has no authority to reverse that decision."

Murdock filed a timely notice of appeal. He also filed a motion to expedite the appeal, which this Court granted; and, noting that he had filed his brief on this appeal, he moved for an injunction requiring the BOP, pending the resolution of this appeal, to release him on November 15 to the Eastern District of Michigan, and not to the District of Vermont. This Court thereafter, noting that the government had not filed a response to the motion for an injunction pending appeal, instructed the government to file an answer to Murdock's motion and to address several issues relating to this appeal, including "whether the district court has authority to modify the terms and conditions of Appellant's supervised release to require that his supervision take place in the Eastern District of Michigan." Order dated October 3, 2013. The government responded and addressed the specified issues in a memorandum that "constitutes its opposition to the issuance of an injunction and its merits brief urging affirmance of the district court's order denying transfer of Murdock's supervised release." (Government Mem. at 3 (emphasis added).)

## II. DISCUSSION

On this appeal, Murdock argues that the district court misapprehended the relief he requested, as he did "not ask[] the district court to reverse a decision by the Probation Department." (Defendant's Amendment to His Pro-Se Brief for Emergency Hearing for the Appeal in the Subject

7

Case at 2.) Murdock argues that the Eastern District of Michigan's refusal to accept the transfer of supervised release is irrelevant because "the District Court of Vermont has broad and untethered authority to modify the conditions of Murdock's probation, requiring supervision in the Eastern District of Michigan" (id.), and that that authority "supercedes provisions and other non-judicially imposed or requested probation conditions" (id. at 2-3). For the reasons that follow, we reject the contention that the district court has unlimited discretion to transfer jurisdiction of his supervised release to another district; but we vacate the district court's August Order and remand to the court for expedited proceedings in order to determine, in the proper exercise of its discretion, and after hearing further from Murdock, whether to modify the supervised-release conditions to effect a transfer.

A. Modification of Conditions of Supervised Release

Several statutory provisions appear to have relevance to Murdock's request to serve his supervised-release term in the Eastern District of Michigan, rather than in Vermont where he was convicted. These provisions are not easily reconciled.

The general provisions governing the authority of the district court to require a convicted defendant to serve a term of supervised release and to comply with certain conditions during that term are set out in 18 U.S.C. § 3583. Subsection (c) provides that "if a term of supervised release is to be included" in the sentence, "[t]he court, . . . in determining . . . the conditions of supervised release, shall consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." 18 U.S.C. § 3583(c). Subsection (d), in addition to setting out a number of supervised-release conditions that the sentencing court is required to impose--none of which are at issue here--provides, in pertinent part, that

8

[t]he court may order, as a further condition of supervised release, to the extent that such condition--

(1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

(2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

(3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);

any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate . . . .

18 U.S.C. § 3583(d) (emphases added). One of the discretionary conditions of probation in § 3563(b) is that "[t]he court may provide . . . that the defendant . . . reside in a specific place or area . . . ." 18 U.S.C. § 3563(b)(13).

The sentence imposed on Murdock did not specify where he should reside after his release from prison but merely recommended that he be returned to the Eastern District of Michigan. Such a recommendation is not binding on the Bureau of Prisons. See generally 18 U.S.C. § 3624(d) (BOP is to provide a person, upon his release from prison, with "transportation to the place of the prisoner's conviction, to the prisoner's bona fide residence within the United States, or to such other place within the United States as may be authorized by the [BOP] Director" (emphasis added)); Report of the Senate Committee on the Judiciary, 98-225, at 148 (1983) ("S.Rep. 98-225"), reprinted in 1984 U.S.C.C.A.N. 3182, 3331 ("[i]n making th[e § 3624(d)] determination [as to destination], the Director will necessarily have to take cognizance of the terms and conditions of supervised release if such a term is imposed pursuant to section 3583" (emphasis added)). However, subsection (e) of 3583 provides in part that

9

[t]he court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)--

. . . .

(2) . . . modify . . . or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision . . . .

18 U.S.C. § 3583(e)(2) (emphases added).

Murdock contends that § 3583(e)(2) gave the district court unfettered discretion to modify his supervised-release conditions to provide that he should serve that term in the Eastern District of Michigan. While it is clear from the above provisions that the court's discretion to modify supervised-release conditions is not unfettered but must instead be exercised in light of the factors described in eight specified subsections of § 3553(a), neither § 3583(d) (dealing with the initial supervised-release conditions) nor § 3583(e)(2) (dealing with modification of those conditions "at any time prior to the" end of the supervised-release term) contains any indication that if one of the supervised-release conditions is that the releasee is to reside in a district other than the district in which he is convicted, the consent of the other district is required. Cf. United States v. Johnson, 529 U.S. 53, 60 (2000) (discussing remedies for an individual who, because of the reversal of some of his convictions, had served more prison time than authorized for his valid conviction, and stating that the trial court "may modify an individual's conditions of supervised release" "as it sees fit").

The government, however, contends that the district court's postsentencing authority to transfer Murdock to the Eastern District of Michigan for service of his supervised-release term is restricted by a different provision, which provides in pertinent part as follows:

10

> A court, after imposing a sentence, may transfer jurisdiction over a . . . person on supervised release to the district court for any other district to which the person is required to proceed as a condition of his . . . release, or is permitted to proceed, with the concurrence of such court.

18 U.S.C. § 3605 (emphasis added). On its face, this provision appears not to permit the court, after imposing sentence, to transfer supervised release to another district without the consent of the other district, and the section has been so construed. See, e.g., United States v. Votta, 212 Fed. App'x 142, 142 (3d Cir. 2007) (affirming the district court's denial of Votta's "motion to transfer jurisdiction over his supervised release" to a different district "[b]ecause the statute requires the concurrence of the transferee court[;] . . . because the transferee court here indicated that it did not concur, the District Court lacked the authority to grant Votta's motion").

This restrictive view of the district court's power to transfer a person's supervised release to another district also finds some support in the provisions prescribing the process of release from prison and the jurisdiction of probation officers. Section 3624(e), governing the release of prisoners, provides that

> [a] prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the Bureau of Prisons to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court.

18 U.S.C. § 3624(e) (emphasis added). Federal probation officers, however, are appointed by "[a] district court of the United States . . . to serve . . . within the jurisdiction and under the direction of the court making the appointment." 18 U.S.C. § 3602(a) (emphases added). It is difficult, therefore, to conclude that the sentencing court, wishing to have a supervised-release term served in another district, has either the authority to have its own probation officers conduct that supervision in the other district or the authority to direct a probation officer appointed by the court of the other district to

11

conduct the supervision. On the other hand, the Senate Report describing the provision that became section "3605, relating to transfer of jurisdiction over a . . . person on supervised release from one court to another," stated that

> [s]ection 3605 . . . provides that the transfer of a . . . person on supervised release to another district may be made either as a condition of . . . supervised release or with the permission of the court . . . ."

S.Rep. 98-225, at 132 (emphases added), reprinted in 1984 U.S.C.C.A.N. at 3315.

In the circumstances of the present case, we conclude that it is unnecessary to resolve the matter of whether the district court has the authority to transfer Murdock's supervised release to the Eastern District of Michigan without that district's consent. A modification of supervised-release conditions is permitted only "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." 18 U.S.C. § 3583(e)(2) (emphasis added). Of these § 3553 factors, the most relevant in the present case are those in subsection (a)(1), concerning, inter alia, "the history and characteristics of the defendant"; subsection (a)(2)(B), concerning the need for the sentence imposed "to afford adequate deterrence to criminal conduct"; and subsection (a)(2)(C), concerning the need for the sentence "to protect the public from further crimes of the defendant." All of these are factors underlying the condition that the Eastern District of Michigan seeks to have imposed prior to accepting responsibility for supervising Murdock. As set out in Part I above, the Michigan Probation officials consider Murdock to be a high-risk offender based on his conduct during his service of a prior supervised-release term in the Eastern District of Michigan. During that term, the officials noted, Murdock had violated the conditions of supervised release by, inter alia, leaving the district numerous times without permission and by absconding just prior to a revocation hearing. By imposing the condition that Murdock agree to begin his supervised-release

12

period in Michigan by spending up to six months in a halfway house, the Michigan Probation officials stated that they hoped to reduce the risk of his recidivism and to protect the public.

Although Murdock has characterized the Michigan Probation officials' position as "capricious" (e.g., Murdock's § 3583(e)(2) Motion at 3), their concerns are plainly justified, as revealed by the record in the present case. The PSR prepared for Murdock's sentencing described in detail the supervised-release violations cited by the Michigan Probation officials. The PSR also described the offense of which Murdock was convicted in Michigan in 2002--possession of false papers to defraud the United States--and detailed more than a half-dozen other offenses, most of them involving fraud or larceny, of which Murdock had been convicted in 1987-1999. The record indicates that Murdock made no objection to the PSR's description of his past offenses.

The reasonableness of the Michigan Probation officials' concerns is thus clear from the record of Murdock's criminal history, and that history must be taken into account by the district court in considering whether, or to what extent, to grant his motion for modification of the conditions of his supervised release. Thus, we conclude that even if the consent of the Eastern District of Michigan is not a statutory prerequisite to the granting of Murdock's motion, and if the halfway-house condition is deemed merely a request, the condition requested is plainly reasonable. We doubt that the district court could, while giving adequate consideration to the above § 3553(a) factors, grant Murdock's motion without imposing the condition sought by the Eastern District of Michigan.

B. Proceedings in the District Court

In denying Murdock's motion, the district court stated only that "[t]he Eastern District of Michigan has refused to accept supervision of Mr. Murdock," and that the court thus lacked

"authority to reverse that decision." August Order. That explanation does not indicate whether it was clear to the district court that the Eastern District of Michigan's refusal was conditional. Further, the papers submitted to the district court in opposition to Murdock's motion do not make clear whether Murdock was afforded an opportunity to accept the Eastern District of Michigan's proposed condition after its response to the Vermont Probation officials' second request for reconsideration. Reviewing the district court's ruling as to its lack of authority de novo, see, e.g., United States v. Vargas, 564 F.3d 618, 621 (2d Cir. 2009), we cannot conclude that that ruling was correct.

We therefore remand to the district court for further proceedings to allow the court to consider the Eastern District of Michigan's condition that Murdock agree to begin his supervised-release term in Michigan by spending up to six months in a halfway house and to determine whether Murdock will accept that condition.

In connection with those proceedings, it may be that a hearing will be required. The Federal Rules of Criminal Procedure governing modifications of the conditions of supervised release provide as follows:

> (1) **In General.** Before modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation.
>
> (2) **Exceptions.** A hearing is not required if:
>
> > **(A)** the person waives the hearing; or
>
> > **(B)** the relief sought is favorable to the person and does not extend the term of probation or of supervised release; and
>
> > **(C)** an attorney for the government has received notice of the relief sought, has had a reasonable opportunity to object, and has not done so.

Fed. R. Crim. P. 32.1(c).

14

It is also possible that no evidentiary hearing will be required. First, there is no suggestion that the three-year term of Murdock's supervised release is to be extended; and to the extent that Murdock would be transferred to the Eastern District of Michigan, that relief, which he requests, would be favorable to him. However, to the extent that Murdock would be required--if he agrees--to spend up to six months of his supervised-release term in Michigan in a halfway house, that condition would appear to enlarge the supervised-release conditions, and he would be entitled to a hearing unless he waives the hearing.

Second, the government plainly has had notice of Murdock's modification request; it has interceded on his behalf with the probation officials in the Eastern District of Michigan; and it has made clear that it has no objection to the transfer of Murdock to the Eastern District of Michigan on the condition desired by that district. Indeed, although urging affirmance of the August Order in light of Murdock's prior refusal to agree to the halfway-house condition, the government has taken the position that

> because Murdock has family ties in the Detroit area, the Eastern District of Michigan is a more suitable district to supervise him than Vermont. . . . Murdock himself has created the situation in which he faces release to Vermont, and has the power to avoid that circumstance by consenting to RRC placement in Michigan.

(Tetu Decl. ¶ 9.)

CONCLUSION

We have considered all of the government's arguments in support of summary affirmance and have found them to be without merit. The motion for summary affirmance is denied.

We have considered all of Murdock's arguments in support of his contention that the

15

court has authority to grant his transfer motion, and we have found them to be without merit except to the extent indicated above. We vacate the August Order of the district court and remand for further proceedings in accordance with this opinion, which should be expedited in light of Murdock's scheduled release from prison on November 15, 2013. Murdock's motion for an injunction pending appeal is denied as moot.

The mandate shall issue forthwith.